Argument not to exceed 50 minutes of the slide, Mr. Wicker, you may proceed for the appellate. Good morning and may it please the court. I represent Mr. Pola. I'd like to reserve three minutes for rebuttal. This is the second time the parties have appeared before the court on this case. The first appeal, the court ruled that if Pola's trial counsel had failed to honor his request to file a notice of appeal,  on remand the district court found that he had, in fact, been denied effective assistance of counsel and permitted this belated appeal. It didn't include the claim that you've got here today, right? Your Honor. The subclaim for failing to advise him of immigration problems. Your Honor, his petition has three claims and claim number three says he is claiming ineffective assistance of counsel. When he expands that later in the petition, he does not address this particular immigration issue. Of course, at the time that he was writing that petition, he was in custody and he had not been deported. So this issue had not fully ripened when he filed his pro se petition. That's correct. So you say that the only way you can raise that is after you've been deported and then you can raise it, but you can't do it beforehand even if you know what the law is. No, Your Honor, I'm not saying that. What I'm saying is that the allegation in his petition, claim number three, that he was denied effective assistance of counsel is judging in the light of how we view pro se petitions, which is with a little more deference than we might for petitions filed by attorneys, that it's expansive enough for the court to consider this issue. On the question of the IAC itself, you're basing this on Padilla and you say that the court didn't say the magic words at the plea proceeding and you claim that his attorney didn't advise him. So I'm correct up to this point, right? That's right, Your Honor. Now, going beyond that, the way I read this material, so correct me if I'm wrong, there is the implication that he therefore didn't know about the consequences of the plea, but nowhere does, if you parse this carefully, nowhere that I can find does it say, does he ever claim he didn't know? And all of the other inferences that one would draw from the record very clearly state that he did know based upon what the U.S. attorney said at the hearing. So bottom line, does he claim he didn't know or does he simply say, or is this a case where, yeah, he probably did know but the judge didn't say the magic words? No, Your Honor. We do have a statement from Mr. Pola in the record in the change of plea hearing. So when he is talking with the court about understanding the nature of the plea, understanding the facts, he says he wants to stay in Louisville and fight the deportation. So that indicates that he's aware there are deportation issues, but he believes that he can fight them, that there are deportation hearings and the statement by the prosecutor at the end of the change of plea hearing talks about deportation hearings. But the reason that I'm asking is what seems to have gone on, reading between the lines here, is there was some misunderstanding or disagreement about whether he would be immediately taken into custody and deported, but there doesn't seem to be really any dispute here that he knew there were immigration consequences. Is that a fair reading of this? I think it's fair to say that he knew there would be deportation consequences. So what specifically then under Padilla was he owed by the judge or his lawyer that they didn't tell him? What those consequences would be. It's very different. And you're either deported or you're not deported. So what are the other consequences that you say Padilla requires the judge to say? It's very different to have a deportation hearing where an immigration judge can make a decision based on the facts and some manner of discretion whether you stay in the country or not. The correct understanding of the law would be that I don't have any right to stay in the country. Because this is an aggravated felony, I'm going to be deported and there is no defense. There is no indication that he was ever advised of those consequences, and those are the consequences that Padilla requires to be given to the defendant so that he can understand and make a choice about whether he wants to go. And the reason I'm asking is Padilla says that, the court said, constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation, end quote. In other words, go, no go. Deportation, no deportation. And it seems to me that he knew that here and that the U.S. attorney filled in any gaps that might be otherwise missing. Where do you get the authority that somebody, his lawyer or the judge, had an obligation to go into more detail about what the consequences were of his conviction beyond the mere fact that he might be deported that he appears to have known? I think the provision of Padilla that you just cited, Your Honor, makes that point, that there is an automatic deportation. It's not a right to a hearing. It's not a right to fight deportation when those issues come up. But it's an automatic, you're already, you've already lost that issue. And judging from his statement at the change of plea hearing and the only statement from the government at the change of plea hearing that talks about deportation proceedings will commence, it's clear that Mr. Padilla misunderstood what the consequences would be. And it could very well be that the prosecutor misunderstood what the consequences would be as well. And I think Padilla requires him to understand the full consequences of deportation so he can make that decision. Do we have any cases that articulate what the judge is supposed to, what that advice from the judge is supposed to include? Well, I'm not aware of any cases that address exactly what the information should be, what the speech from the judge should be. But I think the only fair reading, Padilla, is if someone is an aggravated felon who is subject to automatic deportation, you have to tell him that. You have to tell him that you are an. Even if you already know? Well, I don't know how that case would come out, Your Honor. But I don't believe that is this case. But you're saying this isn't an automatic deportation case. No, I'm saying that he did not know it was an automatic deportation case. Was it or wasn't it? Drug conviction. It was, it is an aggravated felony. He was subject to automatic deportation, and the record indicates that he didn't know that. The district court had a hearing on the motion for ineffective assistance of counsel, but did the petitioner here raise anything about that at this hearing before the district court? Your Honor, the hearing was limited to the question of whether he asked his counsel to file a notice of appeal. But it was based upon ineffective assistance of counsel. He didn't raise that, nor did he raise the fact that counsel told him he would have time served, and therefore he was ineffective because of that. Well, both those issues came up, Your Honor, and in fact trial counsel testified that he and Mr. Pola were both surprised to see an immigration agent at sentencing who intended to take Mr. Pola into custody if the court didn't bring him into custody. And that's in the record at 161, page 881. So it indicates from his trial counsel that they were both surprised by the immigration consequences of what had happened at the change of plea hearing. Was an appeal taken from that, saying that the district court should have made a ruling on those issues? Well, this is the belated appeal of the sentence, of the conviction, and I believe all those issues are properly before the court according to the mandate from the first appeal that we could raise those issues, the four issues that had been raised in his petition. I just would like to say for a minute to talk about the second. Let me just follow up on that briefly. So we're always concerned in a 2255 whether something has been properly presented. Was this presented? What I think you might have referred to earlier as a subset of an argument? I think you're going back to Judge Seiler's question? Yes. Yes. In his petition, which he filed pro se, point number three is ineffective assistance of counsel. When he is going into more detail in the petition, he does not talk about that particular aspect of ineffective assistance. So the district court didn't deal with it, and the evidentiary hearing didn't deal with it. That's right, Your Honor. We're not dealing with an exhaustion question here because it doesn't come from state court. So this question then, is it correct to say it's coming before us for the first time then? I think that's correct, Your Honor. So I believe there's a sufficient record for the court to decide whether he was given the proper instruction about the automatic deportation. Certainly the court could remand for evidentiary hearings in the court below, but I believe the record is sufficient for the court to decide this issue as it's presented to the court now. I'd like to raise in the time I have remaining the second point, the way Mr. Polowitz denied effective assistance of counsel, by being misinformed about what his sentence would be. By the time of his change of plea hearing, he had served about nine months in pretrial detention. And on the day of the plea, he was released under a motion in which he and the government agreed that he had already served the full sentence he was likely to receive. Of course, the government said at the hearing that it did not necessarily agree with that part of the motion. But the statute, 18 U.S.C. 3143, does not allow Mr. Polowitz to be released unless the court finds that the government doesn't believe that he will have to serve additional time in custody. So there is no doubt from the record that his expectation was that when he went to sentencing, he would go home, that he would be released and sentenced to time served. And the prosecutor admitted that at the sentencing hearing, of course, that he was badly misinformed and he was sentenced to serve 46 months in prison. What relief does he want? Does he want it all to be set aside and have a new trial? Yes, Your Honor. What are the sentencing guidelines under this charge, do you know? Your Honor, he was sentenced at a 23, so that's 46 to 57 months. If he were convicted at trial, then he would be at a level 26, so that's 66 to 79 months or so. So he could get more time. So he could get more time. Unless he's getting deported besides, right? Right, Your Honor. A substantial argument could have been made that if even some of these pills were to be distributed, not all of them were, but some of them were for personal use. That argument was never raised at sentencing. There was no sentencing memo filed. But the important thing is that he has made the decision that he would rather take the risk of an additional 15 to 20 months in prison to be relieved of the immigration consequences and be allowed to come back into the United States and be with his family, his wife and his two children. Well, he might not be relieved of his immigration. If he vacates the conviction, if he's convicted again, then he'll be an aggravated felon again and he'll be subject to automatic deportation. Thank you. Thank you. May it please the Court, Mr. Wicker. I'd like to take about 15 or 20 seconds to note the fact there are several young people in our courtroom today and I think many of them are law clerks from the summer from the U.S. Attorney's Office and from Mr. Wicker's office. And in reflecting on that, I realize that it was 33 years ago that I first came to this court as an intern from a large law firm. And so for 33 years, I've had the pleasure of arguing cases in this court in front of you three judges as well as most of the others. And I want to tell you it's a great privilege. I'm going to retire in two more months, so this will be my last argument. And it kind of gets to me, but at any rate. Good to have you here as well as your interns. Congratulations on your impending retirement. I'm excited about it, but I'm afraid I'll be bored, so I'll have to find something exciting to do. You can keep coming back to watch. I may. That may be my hobby to come sit in court and second-guess all the arguments that other people make. In that 33 years, for seven years, I have been working on Ace O'Polla's appeals in various aspects. As the court has read, the record in this case is extensive. My involvement began in April of 2010 when Mr. O'Polla's original pro se appeal was dismissed as being untimely. Without going through all that lengthy record, we're here today on the simple, direct appeal by Mr. O'Polla in which he claims his counsel was ineffective in the two ways that the court has already recognized. He contends that his counsel misadvised him as to the length of the sentence that would be imposed on the basis of his offer plea. Then he contends that he was never advised appropriately of a deportation that would happen as a result of his being convicted of the aggravated felony that the drug distribution amounted to. On the deportation issue, I'm trying to figure out exactly what the argument is. It seems, perhaps, that it's coming down to he may or may not have known there were some deportation consequences, but that he wasn't told that this was one, this was a, because it was an aggravated drug felony, would subject to him being automatically deported. So he seems to be saying, okay, I knew I might be deported, but I thought I had a way to beat the deportation, and I should have been told otherwise. Is that your understanding here? That is my understanding of the position. Now, I will point out that this case predated, or his guilty plea predated Padilla. It was in 2009, and Padilla didn't come down until March of 2010. So the issue was probably not as, folks weren't as finely attuned to that issue at that time. And one more point, the judge had no responsibility at the time to give him information about the deportation or immigration consequences of his offer plea. Has Padilla been held to retroactively apply?  There's a case called Chidas, I believe it's called, and it does not apply retroactively. So if he were to raise this in a 2255 today for the first time, it would be barred because it's not retroactive. But it was pending. His appeal was pending. Because of the unique nature of this case, he counts as one who's now on direct appeal. And so we didn't even try to argue that this direct appeal is barred by the non-retroactivity of Padilla. Are there any cases that you're aware of that do articulate, if you give the Padilla advice, what it has to include? Only Padilla itself, Your Honor, because as Mr. Ricker did point out, Padilla says that if you are going to be deported on the basis of, I believe the language in Padilla is a clear and succinct statutory provision, then that should be the advice that counsel gives to his client or her client. Is there any kind of an exception if the defendant is told of it in some other way or knows about it in some other way? Certainly for the purposes of ineffective assistance of counsel, that is an important consideration. Because in order, of course, to make an ineffective assistance of counsel claim, he has to demonstrate that his counsel's representation was deficient. And also that the results of the proceedings would have been different but for counsel's failure to give him that good advice. So if he learns of it in other ways and if he has reason to know that he will be deported because of a statute or for any reason, including whether the Assistant United States Attorney announced that in court, quote, he knows he's going to be deported, I believe is the quote from the Assistant U.S. Attorney, then that goes to the issue of whether or not the results of the guilty plea would have been different. I would point out that he never moved to withdraw his guilty plea in the district court at any point. Obviously this issue perked for quite a while, but never during the course of that, of these lengthy proceedings, did he ever say to the district court, I want to withdraw my guilty plea. The first time he sought to ask for relief on this deportation issue is in this appeal. He never raised it in his 2255 petition. He didn't raise it in the original appeal that he filed in this court, which was dismissed as untimely. So the first time this court has seen it is in this. So is that claim properly before us in your mind in this 2255? I think the record is sufficient for this court to rule that he has not shown ineffective assistance of counsel. But there certainly... You just had two double negatives there. I don't know what that means. Let me try again then. He has not demonstrated that the circumstances of this case result in ineffective assistance of counsel. The record is not sufficient for this court to determine that he did get ineffective assistance of counsel. And are you saying there's no showing of either deficient performance and prejudice? Or are you focusing on prejudice? I would focus on prejudice, Your Honor, because I think, again, in 20-20 hindsight, after Padilla, his counsel probably did have a responsibility to advise him, you will be deported. Again, the record shows at the time he pled guilty, he was advised of that in open court. I would point out one other thing. How can it be deficient performance if Padilla came later? And that's why Padilla is not retroactive, Your Honor. There's a series of arguments that say defense counsel should have anticipated something that was going to come down the road and that would be applied retroactively in some cases. Was that true here? Did anybody anticipate? Are there any cases that said defense counsel to be competent, should have correctly anticipated Padilla, particularly a couple years before? I'm focusing on Padilla only. Padilla cites some cases in which there was some differences of opinion, but it certainly wasn't something that the lawyer in this case contemplated. I don't know what was in his mind. I don't know if he researched the issue or knew what the cases had said from either this circuit or others. But after Padilla, that question was certainly answered by the Supreme Court as to what counsel should say. I would point out that there were other factors in this case that led everybody in the whole court system to understand that the immigration consequences of Mr. Pollitt's offer plea were imminent because, as you recall, Judge Kaufman, when she was deciding whether or not to accept the offer plea, she was puzzling about how this would work and in fact recognized that the Immigration and Customs Enforcement agent, who had been the investigating agent on this case because of the bringing of these drugs back and forth over the Canadian border, she basically was trying to understand whether there was or wasn't a detainer or a hold, I think is what she called it. And the Immigration and Customs Enforcement agent said, Your Honor, he's a legal resident alien and we can't put a hold on him until he is sentenced. And of course it's at the point of conviction and sentencing when he stands convicted of the aggravated felony that would result in his automatic deportation. So there was certainly a lot of discussion about how the INS or the ICE enforcement and the resulting deportation would work. The other thing that was clear is that while Mr. Pollitt claims that he was surprised that he got a sentence under the sentencing guidelines, what he was really surprised at is that he wasn't going to walk out of the courtroom even if he had not been sentenced to 46 months. He apparently operated under the misapprehension that somehow he would be allowed to remain free pending some immigration hearing of some sort. And in fact, at the 2016 evidentiary hearing, he said that he hoped he'd be able to self-remove or that he hoped he'd be able to fight the deportation from Louisville. I am unaware of what due process he might have been able to invoke to attack his conviction. Perhaps he thought since he had entered an offered plea, this would not count as a conviction for purposes of the deportation statute. But we'll never know that because when he was released from prison in Ohio, he waived any deportation hearing. He simply said, I don't want any further proceedings. I don't know if it could have been a veiling or at least stretched this out so that he could have had an opportunity to attack his conviction to say that it doesn't amount to a conviction for an aggravated felony. But that falls on him because he agreed to be deported back to Canada. So that's the reason for much of this is the inability to bring him back to the United States for purposes of his 2255 hearing. On the issue of whether or not he was misadvised by his counsel of the potential sentence that he would face, the record is clear that he did not suffer ineffective assistance in that aspect of his sentencing. He was advised repeatedly by Judge Kaufman that he would be sentenced under the sentencing guideline. She said to him, there are no promises made to you. There was no plea agreement, so he had no reasonable basis to conclude that he would be sentenced to this time served that he later claimed in his 2255 petition had been promised to him. In his 2255 petition, he said that he had been lured, and that is his words, by the defense counsel into accepting this offer plea with a promise of time served. And he accused the United States Attorney's Office of prosecutorial misconduct for luring him into this offer plea with a promise of time served. The evidence, the record flatly refutes that there were any such representations made by the United States. The representations his lawyer made in the later 2255 hearing were hoped for an anticipated result. I believe counsel said that he thought he had a good argument, but as an experienced lawyer, he certainly understood that the sentencing guidelines were going to govern this case. Did the period of time served fit within the guidelines for this offense? No, far below. Much less, was it? The guideline ranged, even with credit for the acceptance of responsibility, the low end was 46 months, and he had served nine months by this time. So he had ample, he was at risk of a 46-month sentence no matter how he, the time served wouldn't count as to move on. I will also note, and I noted this in our brief, that any suggestion that the United States agreed that he would be given a sentence of time served is completely refuted by the statements of the Assistant United States Attorney at the plea colloquy. Counsel for Mr. Pola had filed a motion for him to be released after he pled guilty but before sentencing. That is indeed an unusual scenario. The AUSA agreed to that, and his quote was, I agree that he may be released because he's going to be deported, and he knows that. This falls into the category of no good deed goes unpunished. Because the second thing that he said was, we recognize the motion that counsel has made on Mr. Pola's behalf, but we completely disagree with any representation in that motion that he will get time served. And again, on the heels of the judge's explanations of the sentencing guideline and Mr. Pola's explanation and his professed understanding of the guidelines because he had studied it, it's clear that the United States never entered into any kind of tacit or overt or any sort of agreement that Mr. Pola would be sentenced to time served. A guideline sentence was the only thing that the United States ever anticipated. That statement by the assistant U.S. attorney was made at the time the plea was entered, not at the time of sentencing. At the time the plea was entered, Your Honor, because the motion was made contemporaneous with that guilty plea. And at the plea, he said, I recognize the motion. It's okay if he's released, but we do not agree that it would be because he is only going to be sentenced to time served at the time he's been sentenced. One other point that was raised, I believe it was you, Judge McKeague, who asked whether there had ever been an objection to the ruling on the 2255 petition. Again, I noted that in the 2255 petition, Mr. Pola claimed that his lawyer and the United States had lured him into this notion that he was going to get time served. At the 2255, in the ruling on that, the magistrate judge clearly said in his report and recommendation as a finding of fact that the United States never lured Mr. Pola into any such agreement and ruled that Mr. Pola had not made out a case that he had been lured with a promise of time served. And we believe that Mr. Pola never objected to that finding. And I think that encompasses also the notion that the United States lured him or his counsel lured him into any kind of promise of time served. And we have pointed that out in our brief. We believe the failure to object constitutes a waiver of the issue for purposes of this case. I have 25 more seconds. One last point. The deportation issue has never been raised. If it is to be considered by this court at all, it should be considered under the standard of plain error. It has to demonstrate that there's an error that was clear that has affected his substantial rights. And in this court's discretion, the court is free to not recognize that error unless the error substantially affects the fairness, integrity, or reputation of these judicial proceedings. That's the Olano standard, and we believe he has failed to make out a case of plain error under that standard. Thank you, Your Honor. Thank you. May it please the Court, I'd like to start by congratulating my good friend, Candice Hill, for her long years of dedicated service to the United States. In addressing the points she made, I think we agree, at least on one point, and I'll use her words, that Mr. Pola had a misapprehension about the circumstances of his sentencing. And I think that's very fair. Although he said he studied the guidelines, he certainly didn't understand them, if he believed that he was going to get a guideline sentence of nine months when they actually turned out to be 46 months. So that indicates, just right there, that he was seriously misadvised by his counsel about what issues he was facing and what possible sentence he was facing if he was convicted. You think it's ineffective of counsel if the counsel says, well, your guidelines are 46 months to something, but you're going to get time served. If he doesn't tell the defendant, you probably won't get it because the court has to depart or vary downward from this. I think that is ineffective. I think he has to say that. I think it is ineffective to allow a client who's looking at 46 months to believe that he's going to get nine months and have him make a decision about whether he wants to plead guilty based on a complete and total misunderstanding of what the guideline range is going to be. You notice there was no variance motion filed in this case. There was no argument of any substantial nature made about why a variance would be appropriate here. There was no argument made that the pill count should have been different, that the weight of the drug should have been different than what the government said it should be. So all of those things, a reasonable person would want to know all those things in deciding whether to plead guilty. On the length of the sentence question, it's your obligation to show ineffective assistance. There is an affidavit from your client purporting to say what his attorney believed about the length of a sentence, and the attorney filed an affidavit, but it didn't touch on the nature of his communications about the length of the sentence. So is it enough to come back and say, well, geez, he told me that it would probably be nine months, and that's not even corroborated by the attorney's affidavit? It doesn't address it in the attorney's affidavit, Your Honor, and certainly I didn't write that one or have anything to do with its preparation. But in the hearing, the evidence you were hearing, his lawyer did testify that he thought he had very good arguments that he would be released with time served. And the motion that was filed by his attorney said that we expect that his obligation to the United States will have been satisfied by the nine months he spent in prison. So that indicates to me that his attorney believed, mistakenly, that he was going to be released with time served. But then his testimony at the evidence you're hearing goes on to say that even though that was his belief, he says he told your client that the actual sentence that may be imposed may be something different. But I thought we had an excellent argument. Certainly. I guess what I'm worried about is opening the door to claims that attorneys said, well, I may get something less than what I actually got, and therefore it's ineffective assistance at counsel, even though both the court and the lawyer advised him that there were no promises and that the judge could and would do whatever the guidelines said. The lawyer has more responsibility than to tell his client the judge can do what she wants to. He has to accept that. Aren't you basically arguing for a rule that either any time the lawyer says, well, here's what the guidelines say, but I think your client will get something different, I think you'll get something different, what you're saying here is that's ineffective assistance at counsel. If he's wrong and that mistake falls below reasonable standards that we require for defense counsel. And do we have any authority that stands for the narrow proposition we're talking about now? Not the narrow one that I'm aware of, Your Honor, but certainly Strickland and all of its progeny talk about what reasonable standards of defense performance are. And there is no reasonable way to believe that Mr. Pola was going to get nine months in prison based on the circumstances he was facing. But he clearly believed that was going to happen. So that was the reason he pleaded guilty. He did not make a knowing and voluntary guilty plea, and his counsel was deficient in not allowing him to understand the nature and circumstances. You say that you don't think there's any reasonable basis for the attorney to have suggested that it would be time served or a lesser sentence, but the record doesn't explain the basis of that apparent belief by the attorney. Is that correct? I think that... We don't know why he thought that or why he said that, and therefore how reasonable it was or wasn't at the time other than what happened in hindsight. I think the way to look at it, Your Honor, is the record doesn't show any reason why that would be a rational belief. It doesn't show any argument for a variance. It doesn't show any unusual circumstances that Mr. Padilla could use to support a variance. It doesn't show any disagreement about the pill count. It doesn't show any reason to believe. There is no reason to support the advice that nine months would be the sentence that he was likely to receive. Other than the plea colloquy. That's right, Your Honor. Okay. All right. Thank you for your arguments. Oh, that's right. In addition to congratulating Ms. Hill on her retirement and the interns, we would like to thank you, Mr. Wicker, for accepting the appointment under the Criminal Justice Act. We know you do that as a service to the court. We very much appreciate it. Thank you.